Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1052 and 01 C 1063 | **DATE** | 11/24/2004 |
| **CASE TITLE** | JOHN M., by his parents and next vs. BOARD OF EDUCATION OF EVANSTON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants plaintiff's fee petition [doc. no. 39] in part and denies it in part. The Court awards plaintiff reasonable attorneys' fees of $58,695.00.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 29 2004 | |
| | Notified counsel by telephone. | | date docketed | 45 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN M., by his parents and next friends, CHRISTINE M. and MICHAEL M., and CHRISTINE M. and MICHAEL M., <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF EVANSTON COMMUNITY CONSOLIDATED SCHOOL DISTRICT 65 and DR. HARDY RAY MURPHY, its Superintendent, in his official capacity, <br><br> Defendants. | Nos. 01 C 1052 & 01 C 1063 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

The case is before the Court on plaintiffs' amended motion for an award of attorney's fees pursuant to 20 U.S.C. § 1415. For the reasons set forth below, the motion is granted in part and denied in part.

### Discussion[1]

The Individuals with Disabilities Education Act ("IDEA") permits "the court, in its discretion, [to] award reasonable attorneys' fees . . . to the parents of a child with a disability who is the prevailing party" in an action to enforce its provisions. 20 U.S.C. § 1415(i)(3)(B). The phrase

---

[1] The facts of this case are fully set forth in *John M. v. Board of Education of Evanston Community Consolidated District 65*, Nos. 01 C 1052, 01C 1063, 2002 WL 1343560, at *1-4 (N.D. Ill. June 18, 2002) and will not be repeated here.

45

"prevailing party" has the same meaning in the IDEA context as it does in the context of civil rights suits. *Bd. Of Educ. of Oak Park Dist. 200 v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000). Thus, a party prevails in an IDEA suit "if he obtains at least some relief on the merits of his claim such as an enforceable judgment, consent decree, or settlement." *Id.*

There is no dispute that plaintiffs are the prevailing parties. *See Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 805 (7th Cir. 2004) (affirming this Court's determination that plaintiffs prevailed in the suit). Our task, then, is to determine what a reasonable fee award is in this case. "The most useful starting point for determining the amount of a reasonable fee," the Supreme Court tells us, "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Plaintiffs seek to recover $85,270.00 for 429.5 hours of work performed by their lawyer. (*See* Pls.' Am. Mot. Atty's Fees at 4.) The District does not challenge the requested hourly rate, $200.00, but it contends that: (1) the time billed was excessive; and (2) the entire request must be reduced to reflect plaintiffs' limited degree of success in the suit.

Though the District contends that plaintiff's counsel bills are generally excessive, (*see* Dist.'s Mem. Opp'n Pls.' Mot. Attys' Fees at 8), it identifies only seven instances of allegedly improper billing: September 10-12, 2001, July 23, 2002 and July 28-30, 2002.[2] The September entries show that counsel spent 9.5 hours preparing the portion of the summary judgment fact statement pertaining to physical and occupational therapy ("PT" and "OT").[3] The Court agrees that those hours are

---

[2] Because the District lodges no other objections to specific time entries, any other such objections it may have are waived.

[3] Though the total time reflected on these entries is 11 hours, only 9.5 of the hours were devoted to the fact statement.

excessive and reduces it to 4 hours. The July entries show that counsel spent 8.75 hours familiarizing himself with the Seventh Circuit's procedures and case law on fees.[4] Once again, the Court agrees that those hours are excessive and reduces them to 4 hours. Thus reduced, the reasonable hours (419.25) multiplied by the reasonable hourly rate ($200.00) yields a lodestar of $83,850.00.

Our inquiry does not end with the lodestar, however. We can increase or decrease the lodestar based on various other considerations including: (1) the time required; (2) the difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the attorney's inability to accept other employment during the life of the case; (5) the usual fee; (6) whether the fee is fixed or contingent; (7) any relevant time limitations; (8) the amount of money involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3. As the Supreme Court noted, most of those factors, such as the time and skill required by the case, the experience, reputation and ability of the attorneys, the usual fee, and awards in similar cases, are subsumed within the lodestar calculation. *Id.* at 434 n.9.

Of the factors that remain, the results obtained is the only one relevant to this case.[5] When, as here, a plaintiff prevails on some but not all of his claims, the court must reduce the award to

---

[4]Though the total time reflected on these entries is 11 hours, only 8.75 the hours were spent on these issues.

[5]Plaintiffs do not seriously argue that any other factor applies. Though plaintiff's counsel asserts that the issues in this case were "novel [and] difficult," (Pls.' Am. Mot. Atty's Fees at 4), he does not explain or support that assertion in any way. Thus, we will confine our discussion to the degree of success factor.

3

reflect the degree of success achieved. If the underlying proceeding involves claims that are factually and legally distinct, the time spent on the unsuccessful claims must be eliminated from the award. *Id.* at 435. If the claims are related, however, the court may "identify specific hours [to] eliminate[] or . . . simply reduce the award to account for the limited success." *Id.* at 436. Thus, we must determine whether plaintiffs' claims are separable and, if not, how much overall reduction in the lodestar will account for their level of success in this case.

At the due process hearing, plaintiffs asked the judge to determine whether: (1) they were entitled to reimbursement of the cost of the independent OT and PT assessments; (2) the District's OT and PT assessments were appropriate; (3) the OT and PT goals and services in John's 2000-2001 individualized educational program ("IEP") were appropriate; (4) the social-emotional goals in the IEP were appropriate; (5) an assistive technology evaluation needed to be performed; (6) whether the District had adequately supported and trained staff; (7) the District provided a qualified occupational therapist for John during the 1999-2000 school year; (8) the District violated John's rights during the development of his IEP; (9) the IEP reading goals and objectives were appropriate; (10) a separate silent reading goal was appropriate; and (11) John needed the services of an occupational therapist to meet his cursive writing goal. (Pls.' Am. Mot. Atty's Fees, Ex. A, 10/17/00 Decision Due Process Hr'g at 2-3.) Plaintiffs prevailed on issues three, four and seven and lost on the rest.

Plaintiff's counsel admits that issue one is distinct from the others and has deleted from his request the time he devoted to it. (Pls.' Mem. Law Supp. Am. Mot. Atty's Fees at 13.) Issues five and nine through eleven are also distinct, he says, but the time he spent on them was negligible. That leaves issues two, six and eight, all of which have considerable factual overlap with the issues on

4

which plaintiffs prevailed. Given the commonalities, it would be difficult, if not impossible, to cull from counsel's billing records the time he devoted solely to the successful issues. Thus, we will reduce counsel's overall request by a percentage to account for the degree of success his clients obtained.

Not surprisingly, the parties characterize plaintiffs' success quite differently. Plaintiffs say they received substantial relief; defendants claim their victory was Pyrrhic. To determine which view is most accurate, we return to the record.

By the time the administrative and judicial processes were over, plaintiffs had received the following relief: (1) an additional sixty minutes per week of direct OT services in school year 2000-2001 to compensate for the District's use of an unqualified occupational therapist the previous year (Pls.' Am. Mot. Atty's Fees, Ex. A, 10/17/00 Decision Due Process Hr'g at 13.); (2) revision of the emotional-social goals in John's IEP (*id.*); and (3) an increase in the amount of direct PT services from thirty minutes per month to thirty minutes per week (*Id.*, Ex. A, 10/21/00 Due Process Hr'g Clarification.) The District says that relief warrants little, if any, fee award because plaintiffs could have obtained it without resorting to the administrative process.

The District's argument is not supported by the record. Prior to the due process hearing, the District offered to settle the dispute by, among other things, "review[ing] the IEP OT and PT provisions and includ[ing] direct OT services" and "review[ing] the social-emotional components of the IEP and includ[ing] more explicit goals," though it believed that the IEP as written was wholly appropriate. (Pls.' Mem. Law Supp. Am. Mot. Atty's Fees, Ex. 4, 8/28/00 Letter to Dempsey from District.) The letter says nothing about compensation for the District's use of an unqualified occupational therapist in the 1999-2000 school year, the amount of direct OT services the district

5

was willing to provide or the extent of revisions it was willing to make to the IEP's social-emotional goals. Moreover, given the District's stated belief that the IEP was proper as written, it was not unreasonable for plaintiffs to conclude that substantial revisions would not be forthcoming.

The settlement letter also says nothing about the PT provisions of the IEP. That issue was not addressed, the District says, because it was settled during a June 7, 2000 IEP meeting, three months before the due process hearing was convened. (District's Mem. Opp'n Pls.' Mot. Attys' Fees at 4; Pls.' Reply Mot. Atty's Fees, Ex. 15, 9/21/00 H'rg Tr. at 20-24.) However, the IEP that resulted from that meeting states that John would receive only thirty minutes *per month* of direct PT services, not thirty minutes *per week*. (Pls.' Mem. Law Supp. Am. Mot. Atty's Fees, Ex. 2, 6/7/00 IEP.) It may well be that there is an error in the PT provisions of the IEP. But plaintiffs can hardly be faulted for pressing the issue when the written document does not reflect the oral assurance the District says it offered. In short, the record establishes that plaintiffs obtained some relief from the administrative process that they not would otherwise have received.

The fact that they received some relief, however, does not mean that plaintiffs were wholly successful. Of the eleven issues plaintiffs presented to the administrative hearing officer, they ultimately prevailed on only three.[6] But the issues on which they prevailed related to the amount of OT and PT services John would receive and the specificity of his social-emotional goals, issues that were at the heart of the parties' dispute. (*See generally* Pls.' Am. Mot. Atty's Fees, Ex. A, 10/17/00

---

[6]Though the administrative hearing officer determined that the PT goals were appropriate, she did so on the assumption that the June 7, 2000 IEP, which provides for only thirty minutes of direct physical therapy per month, was erroneous. (*See* District's Resp. Opp'n Pls.' Am. Mot. Attys' Fees, Ex. C, 10/21/00 Due Process Hr'g Clarification.) Because plaintiffs had no written assurance that the District would, in fact, provide thirty minutes of direct PT services weekly until the hearing officer so found, we deem the increase in PT services a victory for plaintiffs.

Decision Due Process Hr'g); *see also Evanston Cmty. Consol. Sch. Dist. No. 65,* 356 F.3d at 802 (characterizing OT as a "primary issue in th[e] case"). Moreover, plaintiffs obtained substantial relief: (1) sixty minutes per week of direct OT services, when the IEP called for none; (2) thirty minutes per week of direct PT services, when the IEP called for thirty minutes per month; and (3) a revision of what the administrative hearing officer termed "boilerplate" emotional-social goals. (*See* Pls.' Am. Mot. Atty's Fees, Ex. A, 10/17/00 Due Process Hr'g Decision at 10.) Because plaintiffs, though not totally successful, prevailed on the primary issues in the dispute, the Court finds that seventy percent of the lodestar, or $58,695.00, is a reasonable fee award in this case.

## Conclusion

For all of the reasons stated above, the Court grants plaintiff's fee petition [doc. 39] in part and denies it in part. The Court awards plaintiff reasonable attorneys' fees of $58,695.00.

**SO ORDERED**               **ENTERED:** 11/24/04

*[signature]*
HON. RONALD A. GUZMAN
United States District Judge